WHATLEY, Judge.
The State of Florida appeals an order granting C.D.M.’s motion to suppress marijuana. C.D.M. was a passenger in a vehicle driven by C.C., which vehicle was stopped by Deputy Vinson for a traffic violation. The trial court granted C.D.M.’s motion to suppress the marijuana based on a finding that, although it was C.C. who asked C.D.M. to give him the marijuana that was in C.D.M.’s possession, C.C. was acting as an agent for Deputy Vinson when he did so. We conclude that the trial court erred in finding that C.C. was an agent of the police where Deputy Vinson did not ask C.C., or even know that he was planning, to tell C.D.M. to hand over the marijuana.
At the hearing on C.D.M.’s motion to suppress, Deputy Vinson testified that he stopped C.C.’s vehicle for a traffic violation. After asking C.C. for his driver’s license, Deputy Vinson asked C.C. to step out of the vehicle and told C.C. that he could smell marijuana coming from his person and coming from the vehicle. Deputy Vinson testified that he told C.C., “I believe that there might be marijuana inside, and if you’re willing, go ahead and voluntarily, you know, if you’re willing to voluntarily give it up, you know, go ahead and do so.” C.C. then walked back to his vehicle and told C.D.M., “Hey, give me it.” C.D.M. then gave the marijuana to C.C.
C.C. testified that when he was talking to Deputy Vinson outside of the car, Deputy Vinson asked him, “Where’s the weed?” C.C. told him that it was in the car. Deputy Vinson then asked C.C., ‘Will you go over there and get it?” C.C. testified that Deputy Vinson told him that he would let them off easy if he got the marijuana. C.C. testified that he felt he did not have a choice because Deputy Vinson told him to get the marijuana.
We conclude that Deputy Vinson’s interaction with C.C. did not transform C.C. into an agent of the police. To establish that C.C. was acting as an agent of the police, C.D.M. was required to show that Deputy Vinson was aware of and acquiesced in C.C.’s actions. See State v. Butler, 1 So.3d 242, 246 (Fla. 1st DCA 2008) (“One seeking the exclusion of evidence as the fruit of an unreasonable search must demonstrate, first, that the government perpetrated the intrusion that led to the discovery of incriminating information.”). In State v. Iaccarino, 767 So.2d 470, 475 (Fla. 2d DCA 2000), this court held that in determining whether an individual acts as an instrument of the police, the court must decide “(1) whether the government was aware of and acquiesced in the conduct; and (2) whether the individual intended to assist the police or fur *661 ther his own ends.” The necessary level of governmental participation involves some amount of knowledge and acquiescence in the search. United States v. Walther, 652 F.2d 788, 792 (9th Cir.1981).
While a certain degree of governmental participation is necessary before a private citizen is transformed into an agent of the state, de minimis or incidental contacts between the citizen and law enforcement agents prior to or during the course of a search or seizure will not subject the search to fourth amendment scrutiny. The government must be involved either directly as a participant or indirectly as an encourager of the private citizen’s actions before we deem the citizen to be an instrument of the state.
Id. at 791.
In the present case, Deputy Vinson testified that when he asked C.C. to get the marijuana from his vehicle, he had no idea where it was located and he was not attempting to gather evidence against C.D.M. We note that C.C. testified that when Deputy Vinson asked him where the marijuana was, C.C. told him that it was in the car, not that it was in C.D.M.’s possession. Therefore, as far as Deputy Vinson knew, the marijuana was in C.C.’s car. Even the trial court acknowledged that Deputy Vinson was probably not targeting C.D.M. when he asked C.C. for the marijuana, stating, “I do feel-and the officer may very well have been targeting [C.C.] as the potential defendant with the marijuana....” There was no evidence that Deputy Vinson knew that C.C. was going to ask C.D.M. for the marijuana, much less that he acquiesced in the conduct. See Iaccarino, 767 So.2d at 475.
Further, according to the testimony of C.C., he was attempting to further his own needs when he asked C.D.M. for the marijuana. He testified that he asked C.D.M. for the marijuana because he thought they would get off easier if he gave it to the deputy. In fact, neither C.D.M. nor C.C. was arrested at the time and they were allowed to go home after the traffic stop.
Finally, the fact that C.C. testified that he felt obligated to cooperate with Deputy Vinson did not transform him into an agent of the police. In Coolidge v. New Hampshire, 403 U.S. 443, 488, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the Supreme Court held that, even though a witness may have felt obliged to cooperate, “it is no[t] part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals.” In holding that the witness was not acting as an agent of the police in that case, even though she may have felt obliged to cooperate, the Court stated that the evidence could only be excluded if “some type of unconstitutional police conduct occurred.” Id. We conclude that Deputy Vinson’s conduct in asking C.C. if he was “willing to voluntarily give” up the marijuana was proper and in no way coercive. See State v. Martissa, 18 So.3d 49, 52 (Fla. 2d DCA 2009) (“During a traffic stop an officer may ask if a person is in possession of a weapon or drugs.”).
Accordingly, we reverse the trial court order granting C.D.M.’s motion to suppress because C.C. was not acting as an agent of the police when he asked C.D.M. to give him the marijuana.
Reversed and remanded.
WALLACE and LaROSE, JJ., Concur.